[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11315

Non-Argument Calendar

_____

JUAN GABRIEL JIMENEZ-HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-862-396

_____

Before WILSON, JORDAN, and BRASHER, Circuit Judges.

PER CURIAM:

Juan Gabriel Jimenez-Hernandez seeks review of a final order from the Board of Immigration Appeals (BIA). The BIA affirmed without opinion the Immigration Judge's (IJ) denial of his applications for withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), 8 C.F.R. § 1208.16(c).

I.

Jimenez-Hernandez, a native and citizen of Mexico, entered the United States on November 7, 2007. He was issued a Notice to Appear (NTA) by the Department of Homeland Security, which charged that he was removable for remaining in the United States for a time longer than permitted. Jimenez-Hernandez admitted the allegations and conceded to the charge. He then filed applications for withholding of removal based on his membership in a particular social group under the INA and for relief under CAT.

In support of his application for withholding of removal, Jimenez-Hernandez identified his particular social group as Mexican public transportation drivers who were forced to give rides to gang members for free. In 2007, he left Mexico for Florida because such gang members forced him to work for them against his will. He claims that he went to the police for help but that they would

not intercede due to fear of the gang. Jimenez-Hernandez stated that these gang members would hurt him if he did not comply, but he also testified that the gang members never actually hurt him. Jimenez-Hernandez further testified that the gang members kidnapped his father, also a driver, because they wanted to know Jimenez-Hernandez's whereabouts. However, a police report described the incident as a carjacking, not a kidnapping.

In support of his application for CAT relief, Jimenez-Hernandez submitted evidence and further testified during the hearing with the IJ. On one hand, he submitted an affidavit stating that he did not fear persecution or torture if he returned to his country of citizenship. But on the other hand, during his hearing, Jimenez-Hernandez testified that the government acquiesced in the complained of gang violence. He also submitted the 2016 Country Conditions Report for Mexico which provided that the government was fighting against corruption and gangs. However, the government's action against gangs was further demonstrated by evidence showing that the perpetrators of the carjacking—whom Jimenez-Hernandez maintained were gang members—served nine months in jail as punishment for the crime.

After review of the submissions and a merits hearing, the IJ issued a written decision denying the applications for withholding of removal under the INA and CAT relief. The IJ found that Jimenez-Hernandez was not credible based on several inconsistencies and inaccuracies in his testimony and other evidence.

II.

"When the BIA summarily affirms the IJ's decision without an opinion, the IJ's decision becomes the final removal order subject to review." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005) (per curiam). "Our review for substantial evidence is highly deferential." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009). We review "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.*

We review credibility determinations under the substantial-evidence test. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006) (per curiam).[1] Once an adverse credibility finding is made, the burden is on the undocumented immigrant to show that the IJ's credibility decision was not supported by "cogent reasons" or was not based on substantial evidence. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (per curiam). An adverse credibility determination alone may be sufficient to support a denial of withholding of removal, especially if the [undocumented immigrant] fails to produce corroborating evidence.

---

[1] A credibility determination may be based on all relevant factors and the totality of the circumstances, including: (1) the applicant's demeanor, candor, and responsiveness; (2) the plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; (5) the consistency of the applicant's statements with other record evidence; and (6) any inaccuracies or falsehoods in statements, regardless of whether any inconstancy, inaccuracy, or falsehood touches the heart of the applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii).

*Kueviakoe v. U.S. Att'y. Gen.*, 567 F.3d 1301, 1304–05 (11th Cir. 2009) (per curiam).  To be eligible for withholding of removal, an applicant must "present specific, detailed facts showing a good reason to fear that he" would be singled out for persecution on account of a protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam).  Evidence consistent with acts of private violence, or that merely shows that the petitioner was the victim of criminal activity, does not show a nexus to a protected ground. *Id.*

To be eligible for CAT relief, an applicant must show that it is more likely than not that he would be tortured if returned to the proposed country of removal.  8 C.F.R. § 208.16(c)(2); *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020).  He also must show that the torture would be by or with the consent or acquiescence of a public official or person acting in an official capacity.  8 C.F.R. § 1208.18(a)(1); *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1375–76 (11th Cir. 2021).

III.

On appeal, Jimenez-Hernandez argues that the IJ's adverse credibility finding was not supported by substantial evidence.  He also argues that the IJ erred in determining that his proposed particular social group, "Mexican public transportation drivers who used to give rides to gang members," was not cognizable as a protected ground under the INA because it lacked social distinction.  He further argues that substantial evidence did not support the IJ's determination that he failed to establish a nexus between his past

harm and fear of future harm and his proposed particular social group.  Finally, Jimenez-Hernandez argues that he is more likely than not to be tortured or killed upon his return to Mexico.

Upon review, substantial evidence supports the IJ's determination that Jimenez-Hernandez was not credible.  Specifically, the IJ found that Jimenez-Hernandez's credibility was undercut by inconsistencies found when comparing his testimony, written statements, and other evidence.  For instance, in one written statement, Jimenez-Hernandez made no reference to any past interactions with the gang.  However, in another written statement, Jimenez-Hernandez indicated that the gang had threatened and hurt him when he refused to work for them, but then during the hearing, Jimenez-Hernandez repeatedly testified that he was never harmed by the gang and could not provide an explanation for this inconsistency.

In another instance, a written statement by Jimenez-Hernandez indicated that, one year after he came to the United States, his father was kidnapped and physically harmed after refusing to give the gang information concerning Jimenez-Hernandez's whereabouts.  However, Jimenez-Hernandez repeatedly testified that his father was not kidnapped but was carjacked by two men who served time for committing the carjacking against his father.  There were also inconsistencies in terms of when this alleged kidnapping or carjacking occurred and whether his father was shot at during the incident.  And finally, Jimenez-Hernandez's statements and testimony regarding whether he was forced by gang members

to transport the gang members themselves or non-gang members, as well as drugs, also appeared to be riddled with inconsistencies.

The IJ's adverse credibility findings are supported in the record, and the record does not compel a finding that Jimenez-Hernandez was credible. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (providing this court must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole"). When provided the opportunity, Jimenez-Hernandez was unable to provide further evidence to rehabilitate the credibility of his own testimony. *Forgue*, 401 F.3d at 1287. Without credible testimony or further corroborative evidence, the IJ could not conclude that Jimenez-Hernandez did or would face harm or torture in Mexico nor that the government would acquiesce to such. *Id.* (providing that an adverse credibility determination may be the basis for denying relief if the applicant produces no evidence other than his testimony). Moreover, the IJ was entitled to rely on inconsistencies and inaccuracies in Jimenez-Hernandez's written statements and testimony as part of the overall credibility calculus, even where those inconsistencies and inaccuracies did not go to the heart of the matter. 8 U.S.C. § 1158(b)(1)(B)(iii); *Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1343 (11th Cir. 2004).

Considering the adverse-credibility determination, substantial evidence review supports the finding that Jimenez-Hernandez is not eligible for withholding of removal. *Kueviakoe*, 567 F.3d at 1304–05. The remaining record evidence, without Jimenez-

Hernandez's own testimony, does not compel a finding that he met the standard to show that he had a subjectively genuine and objectively reasonable fear of returning to Mexico. *See Kazemzadeh*, 577 F.3d at 1352. For example, evidence of generalized violence and corruption in Mexico in the 2016 Country Report was not enough to show that anyone specific would try to harm him. *See Rodriguez v. U.S. Att'y. Gen.*, 735 F.3d 1302, 1307, 1310–11 (11th Cir. 2013) (per curiam).

Likewise, regarding the CAT claim, the police report filed by Jimenez-Hernandez's father about the carjacking incident does not indicate that Jimenez-Hernandez was persecuted in the past or has a well-founded fear that he would be specifically targeted in the future. *See Kazemzadeh*, 577 F.3d at 1351–52. Thus, nothing in the record would compel a reasonable fact finder to reverse the agency's finding. *See Chen*, 463 F.3d at 1233.

**PETITION DISMISSED.**